IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DARRYL HARROD, #351953 | * | |
| Plaintiff, | | |
| v. | * | CIVIL ACTION NO. DKC-08-3299 |
| DAN BAUMGARDNER[1] | * | |
| DEBBIE CESSNA | | |
| R. EICHELBURGER | * | |
| H.R. MICHAEL | | |
| ALLISON NARDI | * | |
| Defendants. | | |
| | *** | |

## MEMORANDUM OPINION

### Background

This 42 U.S.C. § 1983 action was submitted by Maryland Correctional Training Center ("MCTC") inmate Darryl Harrod and received on December 8, 2008. Harrod originally filed a Complaint against three members of the healthcare staff and a correctional officer. He accuses Nurse Baumgardner of prescribing hydrocortisone cream for his genital problem without personally examining him, complained that Nurse Cessna refused to see him even after a correctional officer expressed a need for emergency care, and alleged that Nurse Eichelburger denied him care over the phone and stated that a sick-call request needed to be resubmitted on three separate occasions. Paper No. 1. Harrod also claimed that Correctional Officer Michael refused his grievance form or to call his supervisor as requested.[2] *Id*.

---

[1]   The docket shall be amended to reflect the correct spelling of this Defendant's name.

[2]   In a supporting affidavit it is seemingly alleged that the officer in question informed Harrod that he did not have any grievance forms and told Harrod to "leave me alone." Paper No. 8.

Plaintiff was granted leave to add Nurse Allison Nardi as a Defendant, claiming that she made derogatory comments to him and had refused to provide him ordered medication (sodium chloride) since January 30, 2009. Paper Nos. 20 & 21.

Medical Defendants Baumgardner, Cessna, and Nardi and state Defendant Michael have filed Motions to Dismiss or for Summary Judgment. Paper Nos. 36 & 40. Plaintiff has filed Opposition materials thereto. Paper No. 44, 47 & 48. For reasons to follow, Defendants' pleadings, construed as motions for summary judgment, shall be granted without the need for oral hearing. *See* Local Rule 105.6. (D. Md. 2008).

## Standard of Review

Summary judgment is governed by Fed. R. Civ. P. 56(c) which provides that:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e)). The court should

"view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

Facts

Plaintiff has a history of sinus problems and marijuana abuse. Paper No. 36, Ex. A at Joubert Aff.; Ex. E at pgs. 1 & 2. On October 22, 2008, he complained of burning in his groin area. He was evaluated by Nurse Wanda Diaz on October 30, 2008, at which time Plaintiff claimed that he had an itchy rash in his groin area and that an unidentified person had given him hydrocortisone cream, a topical steroidal ointment, to treat the rash.[3] *Id.*, Ex. A; Ex. E at pgs. 3-5. Diaz diagnosed Plaintiff with tinea cruris, an itchy superficial fungal infection of the groin area. *Id*. Plaintiff was given a tube of antifungal cream from the pharmacy stock and advised to return to the clinic in two to three weeks if his symptoms did not improve. *Id*.

Plaintiff offered no complaints about the rash until January 30, 2009, at which time Physician's Assistant ("P.A.") Kevin McDonald examined Plaintiff, observed a maculopapular rash on both sides of his groin, prescribed Nizoral, an oral antifungal medication, and educated Plaintiff about his condition. Paper No. 36, Ex. A; Ex. E at pgs. 6-8. The medical Defendants state that

---

[3] The medical Defendants state that there is no documentation in Plaintiff's record that he ever received hydrocortisone cream. Paper No. 30, Ex. A.

Nizoral is a non-formulary medication which requires approval before it is ordered as it is not on the list of medications generally prescribed and in stock. Paper No. 36, Ex. A. They claim that the Nizoral was ordered five days later on February 4, 2009. *Id.*; Ex. A; Ex. E at pg. 8. On February 6, 2009, Plaintiff came to the dispensary to complain that he had not yet received the Nizoral. The medical Defendants assert that Plaintiff became agitated and threatened a nurse and other healthcare staff with a lawsuit for withholding the Nizoral. Plaintiff was provided saline soaked gauze to apply to the affected area as a wet-to-dry dressing and was told that he would receive the Nizoral as soon as it was available from the pharmacy. *Id.*, Ex. A; Ex. E at pg. 9. On February 7, 2009, Plaintiff was seen in the dispensary for wound care. The healthcare provider noted that the "area remains red in inner folds of groin. NO drainage noted. Skin, dry whitish around paremeter [sic]. Waiting for nizorol [sic] order to come in. Pt. has gauze and NSS for self-care with dsg change. No dsg on when arrived to disp." *Id.*, Ex. E at pg. 10.

On February 8, 2009, Nurse Diaz examined Plaintiff and noted that his rash continued to improve and that Plaintiff was able to do self-care with gauze and the saline solution. *Id.*, Ex. A; Ex. E at pg. 11. On February 11, 2009, Plaintiff received the Nizoral. *Id.*, Ex. A; Ex. E at pg. 17. On February 15, 2009, Plaintiff again complained of itching in his groin area. *Id.*, Ex. A; Ex. E at pg. 12. He claimed that the itching had increased with the use of the Nizoral and had also caused burning in the area. *Id.* P.A. McDonald examined Plaintiff on February 19, 2009, and noted that Plaintiff had some small pustules on the front part of his right leg. Otherwise McDonald found that the rash was improving. McDonald added Bactrim, an antibiotic, to Plaintiff's medication, and advised him to continue the use of Nizoral and the wet-to-dry dressings. Paper No. 36, Ex. A; Ex. E at pg. 14. Plaintiff received the Bactrim the following day. *Id.*, Ex. A.

On March 23, 2009, McDonald re-examined Plaintiff and took aerobic and anaerobic cultures of the pustular areas to ascertain the bacteria causing the infection. *Id*., Ex. A. The culture results were positive for staphylococcus aureus, a bacteria sensitive to Bactrim. *Id*., Ex. A; Ex. E at pg. 19. On March 26, 2009, McDonald re-evaluated Plaintiff. *Id*., Ex. A; Ex. E at pgs. 15-16. Plaintiff stated that his rash was improving, but McDonald noticed several small pustular areas on his upper legs that were not in the area of the rash. *Id*., Ex. A; Ex. E at pg. 16. He renewed the Nizoral and additionally prescribed hydroxyzine Hcl[4] to treat the rash and pustular areas on Plaintiff's legs. *Id*., 36, Ex. A; Ex. E at pgs. 16-18.

In response to the Complaint allegation, Nurse Allison Nardi affirms that on April 3, 2009, she evaluated Plaintiff's wound and noted that the surrounding tissue had no tunneling[5] and was soft. *Id*., Ex. D; Ex. E at 20. She maintains that Plaintiff did not complain of any pain, nor did he have a dressing on the area when she examined him. *Id*., Ex. D. Nardi states that Plaintiff had been instructed on how to change his dressing and at the time of her examination, he did not have any condition or medication regimen which would have prevented him from doing so himself. *Id*. Nardi claims that she had no other dealings with Plaintiff with regard to his rash after the April 3, 2009 encounter. *Id*.

On April 8, 2009, P.A. McDonald re-evaluated Plaintiff. He complained of having problems with the rash and noted that he had a pustule on his upper left leg. Paper No. 36, Ex. A; Ex. E at pg. 21   McDonald noted a small, reddened, non-draining pustule on Plaintiff's leg, added

---

[4] Hydroxyzine Hcl is an anti-anxiety medication that is often useful in the management of pruritus (itching) due to allergic conditions.

[5] According to the medical Defendants ,"tunneling" refers to a narrow opening or passageway underneath the skin that can extend through soft tissue and results in dead space with potential for abscess formation. Paper No. 36, Ex. A.

Clindamycin (antibiotic) to the medication plan, and renewed Plaintiff's Nizoral and Hydroxzine Hcl regimen.[6] *Id.*, Ex. A; Ex. E at pgs. 21-22.

Correctional Officer Michael seeks dismissal of the Complaint alleging that Plaintiff's medical grievance was received on November 26, 2008, but not responded to until February 13, 2009. Paper No. 40, Ex. 1. The grievance was dismissed as moot. Michael affirms that on an unspecified date Plaintiff came to him and requested to go to the medical department for a rash on his genitals. *Id.*, Ex. 2 at Michael Aff. Michael maintains that he called and spoke with a female nurse who informed him that a male nurse has to be present for the examination of Plaintiff's genital area and that none was available at that time. Michael was told by the nurse that Plaintiff had to put in a sick-call slip. *Id.* Michael also declares that when this information was conveyed to Plaintiff he became agitated and upset and said that he wanted an administrative remedy procedure ("ARP") form. Michael did not have any forms, but told Plaintiff that he would get him one as soon as he could find them. *Id.* He affirms that as he was about to locate an ARP form for Plaintiff the following day, he learned that Plaintiff had already received a remedy form. *Id.*

Michael argues that he did nothing to deny or delay Plaintiff's medical treatment. He alleges that pursuant to Plaintiff's verbal complaint request, he contacted a medical department nurse and reported her response to Plaintiff. Paper No. 40. He also contends that the delay of receipt of an ARP form by one day had no effect on Plaintiff's health.

In his Opposition materials, Plaintiff claims for the first time that in August of 2008, he submitted a sick-call slip because his groin area was terribly raw, with "white puss bumps between

---

[6] For their part, Defendants Baumgardner and Cessna affirm that they have not been involved in Plaintiff's care. Paper No. 36, Exs. B & C.

inner legs." Paper No. 44. He now contends that he received no response and filed additional sick-call forms in September and October of 2008. *Id*. Plaintiff also raises eleventh-hour claims that the Assistant Warden called medical personnel on his behalf and he was nonetheless refused care. *Id*.

He complains that: he did not receive wet-dry dressings "in retaliation;" it took medical Defendants several months to do a culture; he has a "deadly" infection which Defendants refused to treat; and the medical Defendants misdiagnosed his condition. *Id*. He also includes additional evidence he claims was "withheld" by medical Defendants. Paper No. 47. Plaintiff further complains that the medical Defendants have failed to include infection control and sick-call manuals and claims that he tested positive for a methicillin-resistant staphylococcus aureus ("MRSA")[7] infection, showing that "all defendant has now breached of contract owed to Plaintiff from sick-call slips, wet to dry dressing changes, wrong medication, to a full outbreak." Paper No. 48.

## Analysis

Based upon the papers filed, there is no evidence that an Eighth Amendment violation has been occurred. An inmate claiming denial of medical care in violation of the Eighth Amendment must prove two essential elements. First, he must satisfy the "objective" element by illustrating a serious medical condition. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). If this element is satisfied, he must then prove the subjective component of the standard by showing deliberate indifference on the part of prison officials or health care personnel. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding that claims alleging

---

[8]   MRSA is a form of staph infection that is resistant to many different antibiotics.

inadequate medical care are subject to the "deliberate indifference" standard outlined in *Estelle*, 429 U.S. at 105-06). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Medical personnel "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. at 837. Health care staff are not liable if they "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id*. at 844; *see also Johnson v. Quinones*, 145 F.3d at 167. Any misdiagnosis of the condition by healthcare staff does not amount to deliberate indifference to a serious medical need. *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). In addition to establishing that personnel acted with deliberate indifference to his serious medical needs, to succeed on a § 1983 damage claim for violation of Eighth Amendment, Plaintiff must show that he suffered from serious injury as result of Defendants' conduct. *See Lawrence v. Virginia Dep't of Corrections*, 308 F.Supp.2d 709, 720 (E. D. Va. 2004).

It does not appear that Plaintiff's rash constitutes a serious medical condition or that Defendants were deliberately indifferent to his condition. The record shows that he experienced a bout of "jock itch"[8] or, in the alternative, staphylococcus aureus infection, that was sensitive to a regimen of Bactrim. He was *not* diagnosed with MRSA and the condition was not "life threatening and did not pose a risk of needless pain or lingering disability if not treated at once." *Davis v. Jones*, 936 F.2d 971-972 (7th Cir. 1991). Further, the jock itch and/or staph infection were treated with topical steroid ointment, wet to dry dressings, and multiple antibiotics and resolved without

---

[8] Dr. Joubert states that "tinea cruris is a pruritic (itchy) superficial fungal infection of the groin and adjacent skin. It is also known in the vernacular as 'jock itch' or 'crotch rot.'" Paper 36, Ex. A.

further intervention. There is no showing that the infection spread or caused Plaintiff any more than mild discomfort from the pruritic rash; no serious injury or pain has been documented. Moreover, Plaintiff's conclusory allegation against Defendant Michael cannot withstand summary judgment as he has failed to show that Michael's alleged actions (or inactions) denied him necessary medical care. The record shows that Michael contacted a nurse pursuant to Plaintiff's request and, while Michael acknowledges that did not provide Plaintiff an ARP on the day requested, it is not disputed that Plaintiff was able to obtain a form the following day. No Eighth Amendment violation has been established on the part of the state and medical Defendants.

**Conclusion**

The undersigned finds that Plaintiff has failed to demonstrate a constitutional deprivation. For the aforementioned reasons, Defendants' Motions for Summary Judgment are hereby granted.[9] A separate Order follows.

Date: July 14, 2009                            /s/
                                               DEBORAH K. CHASANOW
                                               United States District Judge

---

[9] Also pending before the court is Plaintiff's Motion for Default Judgment. Paper No. 41. He claims that Defendant Eichelburger was properly served with process and has not filed a response. *Id.* The docket shows that certified mail to Defendant Eichelburger, consisting of summons, U.S. Marshal form, and Complaint, was sent return receipt requested and accepted and signed for by Correctional Officer F. Ludwig, a supply room officer on March 25, 2009. Paper Nos. 33 & 37. The court is not aware of any authority the correctional officer would have under Rules 4 & 5 and Maryland law to accept certified mail service on behalf of medical personnel, such as Eichelburger. Therefore, it does not appear that service of process was properly executed as to Eichelburger. The Motion for Default shall be denied. In light of this finding and the substantive conclusions of the court, the Complaint against Eichelburger shall be dismissed.